2007 OK 54

**Mark BILBREY, individually and as representative of a class of all those similarly situated, Plaintiff/Appellee,**

v.

**CINGULAR WIRELESS, L.L.C., a Delaware Limited Liability Corporation, Defendant/Appellant.**

No. 102,973.

Supreme Court of Oklahoma.

June 26, 2007.

Glen D. Huff, Robert D. Hoisington, Foliart, Huff, Ottaway & Bottom, Oklahoma City, OK, and Mark A. Wolfe, Pate & Wolfe, Oklahoma City, OK, and Stratton Taylor, Darrell W. Downs, Taylor, Burrage, Foster, Mallett & Downs, Claremore, OK, for appellee.

Clyde A. Muchmore, Crowe & Dunlevy, Oklahoma City, OK, and Roman P. Wuller, Robert J. Wagner, Thompson Coburn LLP, St. Louis, MO, and Evan M. Tager, Archis A. Parasharami, Mayer, Brown, Rowe & Maw LLP, Washington, D.C., for appellant.

WINCHESTER, C.J.

¶ 1 The issue before this Court is whether a named plaintiff in a class action lawsuit must be dismissed when that plaintiff subsequently signs a consumer form-contract containing a mandatory arbitration clause that includes a class action waiver. We find the clause unenforceable.

## I. FACTS AND PROCEDURE

¶ 2 On February 15, 2001, the plaintiff, Mark Bilbrey, filed a class action lawsuit, against the defendant, Cingular Wireless, L.L.C., a Delaware Limited Liability Corporation, for breach of contract, fraud/deceit, deceptive trade practices, and unjust enrichment/disgorgement. Bilbrey alleges Cingular calculated the duration of answered incoming calls beginning at the time of channel seizure, just before the wireless telephone starts ringing, rather than when the call is answered. He alleges that this practice results in overcharging the defendant's customers by an additional minute in excess of the actual duration of certain answered incoming calls. He claims this practice violated the defendant's contracts with its customers, that the defendant made representations to its customers contrary to its actual actions regarding these overcharges, and violated the Oklahoma Consumer Protection Act, 15 O.S. 2001, §§ 751 et seq. by its deceptive trade practices. Bilbrey seeks money damages on his behalf and a putative class alleged to be composed of several million customers residing in many different states.

¶ 3 A review of the facts reveals that Bilbrey is suing Cingular over a contract he signed with Southwestern Bell Mobile Systems, a contract to which Cingular became the successor in interest. Cingular attained that status in October 2000. On May 23, 2001, three months after Bilbrey filed his lawsuit, he obtained a new wireless phone from Cingular and signed a new contract,

which contained an arbitration provision.[1] It provides Cingular and the customer agree to arbitrate any and all disputes and claims arising out of or relating to the agreement, or any prior agreement for products or service between the customer and Cingular, including any of Cingular's predecessors in interest.

¶ 4 Cingular asserts the arbitration clause was on the back of the page Bilbrey signed. On the front page, just above his signature was a notification that other important terms and conditions of service appear on the back of the page and the notification contains an acknowledgment that Bilbrey read and understood the agreement and its terms and conditions. A space was provided for and was executed with Bilbrey's initials. He does not dispute that he signed the document. A brief filed on his behalf, which is part of the record before the district court, contains a copy of the signature page and the above-described acknowledgment.

¶ 5 The first paragraph of the Terms and Conditions contains the following provision in capital letters: "IMPORTANT NOTICE:

1. The arbitration clause in its entirety provides: "INDEPENDENT ARBITRATION Please read this paragraph carefully. It affects rights that you may otherwise have. (a) CINGULAR and you shall use our best efforts to settle any dispute or claim arising from or relating to this Agreement. To accomplish this, CINGULAR and you shall negotiate with each other in good faith. If CINGULAR and you do not reach an agreement within 30 days, instead of suing in court, CINGULAR and you agree to arbitrate any and all disputes and claims (including but not limited to claims based on or arising from an alleged tort) arising out of or relating to this Agreement, or to any prior Agreement for products or service between you and CINGULAR or any of your or CINGULAR's affiliates or predecessors in interest. The arbitration of any dispute or claim shall be conducted in accordance with the wireless industry arbitration rules ("WIA Rules") as modified by this agreement and as administered by the American Arbitration Association ("AAA"). The WIA Rules and fee information are available from CINGULAR or the AAA upon request. CINGULAR and you acknowledge that this agreement evidences a transaction in interstate commerce and that the United States Arbitration Act and Federal Arbitration Law shall govern the interpretation and enforcement of, and proceedings pursuant to, this or a prior agreement. Unless CINGULAR and you agree otherwise, the location of any arbitration shall be in the city where CINGULAR's Mobile telephone [sic]

THIS AGREEMENT CONTAINS MANDATORY ARBITRATION AND OTHER IMPORTANT PROVISIONS LIMITING THE REMEDIES AVAILABLE TO YOU IN THE EVENT OF A DISPUTE. PLEASE REFER TO THE SECTION ENTITLED 'ARBITRATION' FOR DETAILS."

¶ 6 Both Cingular's answer, filed April 17, 2001, and the April 23, 2001, amended answer raise as a defense that "Plaintiff and/or some or all of the putative class members are barred by the terms of their contracts which subject disputes to binding arbitration administered by the American Arbitration Association under its Wireless Industry Arbitration Rules." At that time, Cingular did not have an agreement with Bilbrey to arbitrate.

¶ 7 On February 7, 2002, a little more than ten months after Bilbrey signed his May 23, 2001 contract, Cingular moved to compel arbitration and to stay discovery. On June 12, 2003, it renewed the motion and explained in the supporting brief that it would implement in its July billing cycle, an arbitration provi-

Switching Office for your access number is located. Except where prohibited by law, CINGULAR and you agree that no arbitrator has the authority to: (1) award relief in excess of what this agreement provides; (2) award punitive damages or any other damages not measured by the prevailing party's actual damages; or (3) order consolidation or class arbitration. The Arbitrator(s) must give effect to the limitations on CINGULAR's liability as set forth in this agreement, any applicable tariff, law, or regulation. In any arbitration utilizing the rules applicable to large/complex cases, as defined under the WIA Rules, the arbitrator(s) must also apply the Federal Rules of Evidence, and the losing party may have the award reviewed in accordance with the review procedures set forth in the WIA Rules. You agree that CINGULAR and you each is [sic] waiving its respective right to a trial by jury. You acknowledge that arbitration is final and binding and subject to only very limited review by a court. If for some reason this arbitration clause is at some point deemed inapplicable or invalid, You [sic] and CINGULAR agree to waive, to the fullest extent allowed by law, any trial by jury. In such case, a judge shall decide the subject dispute or claim. CINGULAR, you and the arbitrator(s) shall not disclose the existence, content, or results of any arbitration. Judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Notwithstanding the foregoing, either party may bring an action in small claims court."

sion containing more favorable provisions to its customers and would make these features immediately available to Bilbrey.[2] The trial court denied the motions and Cingular filed this interlocutory appeal pursuant to the Uniform Arbitration Act.[3]

## II. THE ARBITRATION CLAUSE

■ ¶ 8 Generally, the existence of an agreement to arbitrate is a question of law to be reviewed by a *de novo* standard. *Rogers v. Dell Computer Corp.*, 2005 OK 51, ¶ 18, 138 P.3d 826, 831. The specific issue here is whether the contractual provision in the May 23, 2001, agreement between Cingular and Bilbrey, validly requires the parties to arbitrate the lawsuit that was in progress at the time Bilbrey signed. Bilbrey claims there is no agreement to arbitrate applicable to this case. He argues that at the time this case was filed, February 21, 2001, there was no agreement between the parties that included a requirement to arbitrate disputes. The agreement between Bilbrey and Cingular's predecessor, Southwestern Bell Wireless Services, did not contain an arbitration agreement. Although Cingular, in its answer to the petition, filed April 17, 2001, and in its amended answer, filed April 23, 2001, includes the defense that the plaintiff and/or some of the putative class members are required to arbitrate their disputes according to the terms of their contracts, Cingular's motion to compel arbitration, filed February 27, 2002, cites only the May 23, 2001, agreement to support its motion.

■ ¶ 9 Among other issues, Bilbrey has raised the issue of whether a subsequently-signed contract clause is unconscionable when it has the effect of dismissing a class action that is being actively prosecuted. This Court has long subscribed to the maxim that a court will not interfere with the con-

tract of the parties absent fraud, duress, undue influence or mistake, and that courts are interested only with the legality of the contract. *Barnes v. Helfenbein*, 1976 OK 33, ¶ 26, 548 P.2d 1014, 1021. The *Barnes* Court observed, "The fairness or unfairness, folly or wisdom, or inequality of contracts are questions exclusively within the rights of the parties to adjust at the time the contract is made." *Barnes, 1976 OK 33*, ¶ 26, 548 P.2d at 1021.

■ ¶ 10 However, in an adhesion contract, there is no adjustment of rights of the parties; the contract is on a take-it-or-leave-it basis. *Max True Plastering Co. v. U.S. Fidelity and Guaranty Co.*, 1996 OK 28, ¶ 7, 912 P.2d 861, 864. A contract of adhesion is not the result of bargaining between the parties. The services that are the subject of the contract cannot be obtained except by acquiescing to the form agreement. *Max True Plastering Co.*, 1996 OK 28, ¶ 7, 912 P.2d at 864. The cost to consumers would discourage submitting such standard consumer contracts to their attorneys for an explanation of their rights and obligations.

¶ 11 That the terms of modern consumer contracts are not freely negotiated and are either not understood or not read by the consumer is already recognized.

"Classical contract theory holds that a contract is a bargain in which the terms have been worked out *freely* between parties that are equals. In many modern commercial transactions, this premise is invalid. Standard-form contracts and leases are often signed by consumer-buyers who understand few of the terms used and who often do not even read them. Virtually all of the terms are advantageous to the party

2. The May 23, 2001 agreement provides: "**CHANGES TO TERMS, CONDITIONS, RATES, FEES, EXPENSES, AND CHARGES** CINGULAR may increase, reduce or otherwise change any terms, conditions, rates, fees, expenses, or charges regarding your service at any time.... IF CINGULAR INCREASES YOUR LOCAL AIRTIME RATE, MONTHLY SERVICE CHARGE OR NETWORK SURCHARGE, OR DECREASES THE GEOGRAPHICAL AREA IN WHICH YOUR LOCAL AIRTIME RATE AP-

PLIES (OTHER THAN A TEMPORARY DECREASE FOR REPAIRS OF [sic] MAINTENANCE), YOU MAY TERMINATE SERVICE WITHIN THIRTY (30) DAYS OF THE DATE OF THE NOTICE WITHOUT INCURRING A TERMINATION FEE."

3. 2005 Okla.Sess.Laws, ch. 364, § 29(A)(1), eff. Jan. 1, 2006, and codified at 12 O.S.Supp.2006, § 1879(A)(1).

supplying the standard-form contract or lease." [4]

¶ 12 After quoting Cingular's first paragraph of its Terms and Conditions, which same paragraph is quoted above, the Appellate Court of Illinois, Fifth District, observed that the provision barring class action was offered to the plaintiff in that case on a take-it-or-leave-it basis hidden in a maze of fine print where it was unlikely to be noticed, much less read. *Kinkel v. Cingular Wireless LLC*, 357 Ill.App.3d 556, 564, 293 Ill.Dec. 502, 828 N.E.2d 812, 819 (2005). When the Supreme Court of Illinois affirmed this lower court decision that the clause was unconscionable, it quoted the conclusion of the appeals court and agreed that the arbitration clause containing the waiver provision could not have been "less conspicuous." *Kinkel v. Cingular Wireless LLC*, 223 Ill.2d 1, 306 Ill.Dec. 157, 857 N.E.2d 250, 265 (2006). Both courts recognized that consumers are not likely to read a maze of fine print, and these two courts are referring to the very contract now before this Court.

¶ 13 Consumers signing such adhesion contracts are susceptible to unpleasant surprises prepared for the protection of the corporation, not the consumer. The law has begun to take a more active role in the protection of the consumer against abuses. That consumers have not read or do not understand the implications of contract provisions has been implicitly recognized in our insurance case law by the use of the phrase "hidden in policy provisions." *Max True Plastering Co.*, 1996 OK 28, ¶ 2, 912 P.2d at 863. As a result, new rules in such adhesion contracts have been applied to protect the "reasonable expectations" of the parties. *Max True Plastering Co.*, 1996 OK 28, ¶ 6, 912 P.2d at 864.

¶ 14 The question we must answer is whether the clause in the May 23, 2001, contract that asserts the parties "agree" to arbitrate any disputes arising from any prior agreement including those from predecessors in interest, is enforceable. The question is not whether the arbitration clause in the May 23, 2001, contract is valid as it relates to that specific contract, but whether it controls the previous Southwestern Bell Mobile Systems contract, which is the contract at the center of this class action.

¶ 15 This state has a policy of favoring arbitration agreements. It adopted the Uniform Arbitration Act in 1978, (1978 Okla. Sess.Laws, ch. 308, §§ 1–18), and the Uniform Arbitration Act (2000), (2005 Okla.Sess. Laws, ch. 364, §§ 1–31, codified at 2006 O.S.Supp.2006, §§ 1851–1881). The Federal Arbitration Act, which was enacted in 1925, makes arbitration agreements as enforceable as other contracts, but not more so. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404–405, n. 12–13, 87 S.Ct. 1801, 18 L.Ed.2d 1270, (1967). The court determines whether there is a valid, enforceable agreement to arbitrate the dispute. *Rogers v. Dell Computer Corp.*, 2005 OK 51, ¶ 14, 138 P.3d 826, 830.

¶ 16 In denying Cingular's motion to compel arbitration, the trial court stated, "... I am of the opinion that this action should be allowed to proceed, that the individual contract signed by the individual plaintiff in his individual capacity to force the cessation of this class action request would be unconscionable...." [5] The court additionally ruled that the issue "should have been raised a long time ago." [6]

¶ 17 Cingular argues that the arbitration provision is not unconscionable under Oklahoma law, that it is not unconscionable to include a class action waiver in an arbitration provision, and that the Federal Arbitration Act would preempt a finding that the provision was unconscionable. Cingular attempts to characterize the issue in this case as solely one where the court must determine if the class action waiver in an arbitration case is unconscionable. *Kinkel v. Cingular Wireless LLC*, 223 Ill.2d 1, 857 N.E.2d 250, 306 Ill. Dec. 157 (2006) is an example of such a case.

---

4. Kenneth W. Clarkson, Roger LeRoy Miller, Gaylord A. Jentz, Frank B. Cross, *West's Business Law* 397 (10th ed.2006)

5. Transcript of Proceedings Had on November 29, 2004, at 6.

6. Transcript of Proceedings Had on November 29, 2004, at 7.

That case involved the same contract as that now before us. The *Kinkel* court found the waiver unconscionable. *Kinkel,* 857 N.E.2d at 278, 306 Ill.Dec. at 185.

¶ 18 We do not address whether a class action waiver in an arbitration provision is unconscionable. Our concern is the inclusion of a provision within the arbitration clause making it retrospective to any contract the consumer has previously signed, even when the claim is actually against a predecessor in interest for which Cingular has accepted liability, and when the claim on that contract has been before a court for a substantial amount of time.

¶ 19 Cingular cites *Barnes v. Helfenbein,* 1976 OK 33, 548 P.2d 1014, which provides the test for unconscionability.

"The basic test of unconscionability of a contract is whether under the circumstances existing at the time of making of the contract, and in light of the general commercial background and commercial need of a particular case, clauses are so one-sided as to oppress or unfairly surprise one of the parties. Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties, together with contractual terms which are unreasonably favorable to the other party."

*Barnes,* 1976 OK 33, at ¶ 23, 548 P.2d at 1020.

¶ 20 It is uncontested that the circumstances existing at the time of making the Cingular contract of May 23, 2001, are these. Bilbrey was already in a class action lawsuit with Cingular over his contract with Cingular's predecessor. He needed to replace his cell phone, which had been stolen. He signed the May 23, 2001, agreement to get a free cell phone as a replacement. That contract contains a full legal page of small print on the back, where the first paragraph warns of an arbitration clause.

¶ 21 Despite Cingular's argument, it defies reason to conclude that Bilbrey intended to halt a class action suit filed February 15, 2001, in exchange for a free cell phone on May 23, 2001. He even continued to pursue the case for another ten months at which time Cingular finally discovered the arbitration clause. Clearly, Bilbrey did not know the implications of the May 23, 2001, contract, and Cingular's agents, the attorneys in this lawsuit, did not realize he had signed it. It is equally clear that both Bilbrey and Cingular's agents were surprised by Bilbrey's signing a contract that could potentially result in the dismissal of a class action lawsuit that was currently being actively prosecuted by Bilbrey and vigorously defended by Cingular.

¶ 22 Such an effect is one-sided and unreasonably favorable to Cingular. The cases cited by Cingular that give effect to retrospective clauses in arbitration agreements are not on point.[7] We accordingly find the retroactive clause in the arbitration agreement unconscionable as it relates to a presently active lawsuit that would be dismissed if this clause were given effect.

¶ 23 Regarding Cingular's preemption argument, we have not ruled on the validity of the arbitration provision in the May 23, 2001, contract. Instead, we have found it unconscionable to apply a class action waiver to the lawsuit currently being prosecuted. That lawsuit involves an earlier contract with a predecessor cell phone provider, which does

---

**7.** The cases cited by Cingular include two cases that are not published: *Lloyd v. MBNA America Bank, N.A.,* 2001 WL 194300 (D.Del.), and *Koontz v. Southwest Speakers Bureau, Inc.,* 1994 WL 390221 (Tex.App.-Dallas). Oklahoma decisions that are not published in the permanent law reports have neither persuasive nor precedential value. *See* Okla.Sup.Ct.R. 1.200. We are not inclined to treat unpublished decisions from other jurisdictions differently. The other cases cited by Cingular do not involve a lawsuit that is being actively prosecuted by the plaintiff where the defendant succeeds in forcing the plaintiff into arbitration based on a subsequently signed contract of adhesion. *Mehler v. The Terminix International Co.,* 205 F.3d 44 (2d Cir.2000) (contract containing arbitration clause was signed before damage occurred); *Zink v. Merrill Lynch Pierce Fenner & Smith,* 13 F.3d 330, (10th Cir.1993) (contract signed before lawsuit was filed); *Garrity v. McCaskey,* 223 Conn. 1, 612 A.2d 742 (1992) (arbitration agreement unchallenged); *Frederick v. First Union Securities,* 100 Cal.App.4th 694, 122 Cal.Rptr.2d 774 (Cal.App. 2002) (contract signed before lawsuit filed); *Old Republic Ins. Co., v. St. Paul Fire & Marine,* 45 Cal.App.4th 631, 53 Cal.Rptr.2d 50 (Cal.App. 1996) (involved two insurance companies which voluntarily submitted to arbitration). Although there are other distinguishing characteristics in these cases as well, the above comments are sufficient.

not contain an arbitration clause. Whether the provision is included in an arbitration clause, or if it stood alone in such an adhesion contract, makes no difference to the result. Our analysis of the issue is applicable to all such contracts governed by Oklahoma law. We reiterate that the attempt to have an actively prosecuted class action dismissed because of a subsequently signed adhesion contract with a consumer is unconscionable. Having rejected the unconscionable application of the class action waiver in the May 23, 2001, separate contract as unenforceable in the current lawsuit, we find that the Federal Arbitration Act's provisions do not preempt this result. *See Kinkel*, 857 N.E.2d at 263, 306 Ill.Dec. at 170.

AFFIRMED.

WINCHESTER, C.J., EDMONDSON, V.C.J., LAVENDER, HARGRAVE, OPALA, WATT, COLBERT, JJ., concur.

KAUGER, TAYLOR, JJ., not participating.

OPALA, J., concurring

Want of consideration **affords an equally cogent reason** for the court's conclusion that the retroactive promise to arbitrate, interposed in this cause, is unenforceable.