2009 OK 94

Marie J. CARTER, D.O., and Marie J. Carter, D.O., P.C., Plaintiffs–Appellants,

v.

Michael SCHUSTER, Defendant–Appellee,

and

Apex Practice Management, LLC, and TSG, Inc., Defendants.

No. 102,602.

Supreme Court of Oklahoma.

Dec. 15, 2009.

As Corrected Dec. 18 & 22, 2009.

Michael Paul Kirschner, Lorrie A. Corbin, Jim W. Lee, Kirschner, Kisner & Lee, PLLC, Oklahoma City, OK, for Plaintiffs–Appellants.

Shawn J. Roberts, Craig E. Brown, Brown & Roberts, PC, Oklahoma City, OK, for Defendant–Appellee.

T.P. Howell, J. Clay Christensen, Day, Edwards, Propester & Christensen, P.C., Oklahoma City, OK, for Defendant-Appellee.

WINCHESTER, J.

¶ 1 The issue in this cause is whether a person, who signed an agreement on behalf of a corporation as its agent, which contained an arbitration clause, can be treated by the arbitration authority as an individual party to the arbitration. We hold that under these facts, he cannot be considered as a party to the agreement to arbitrate.

### I. Facts and Procedure

¶ 2 Dr. Mary J. Carter, plaintiff-appellant,[1] is a general surgeon practicing in Oklahoma City. Dr. Carter met Michael Schuster, defendant-appellee, during her residency in 2001. Mr. Schuster is an officer and director of Apex Practice Management, L.L.C. (Apex) and ·TSG, Inc., which provide professional, administrative and business operating services for medical practices. He solicited Dr. Carter as a client, and discussed various proposals. Dr. Carter asserts that he offered her a guaranteed salary of $250,000 in her first year of practice, a percentage participation in Moore Medical Center and a higher assured collection rate for her future receivables than his competitors.

¶ 3 Dr. Carter and Mr. Schuster signed a management services agreement in May 2001. Mr. Schuster signed the agreement as the manager of Apex Practice Management, LLC. The agreement contained a provision requiring Dr. Carter to obtain a line of credit in her name, which would be used to fund her salary. She alleges that Mr. Schuster repeatedly promised her that she would never be responsible for repayment of that debt and that it needed to be in her name as a formality to avoid certain federal regulations. The agreement also contained an arbitration clause.

¶ 4 The agreement was to commence July 15, 2001, and continue to December 31, 2003. Dr. Carter alleges that Apex and TSG did not possess the experience or capability to provide the represented services as offered and she was not given her interest in Moore Medical Center, nor were all the payments made on the line of credit as promised, which left Dr. Carter solely responsible for the line of credit. She filed a lawsuit in the District Court of Oklahoma County on April 2, 2003, against Apex and TSG for breach of contract and negligence.

---

1. Dr. Marie J. Carter, D.O., P.C., is also a plaintiff-appellant in this cause. Dr. Carter and her P.C. shall be referred to in the singular as "Dr. Carter."

¶ 5 The defendants moved to compel arbitration on June 5, 2003, and to stay the proceedings in the trial court. Based on the arbitration clause, the parties agreed that the case should be referred to arbitration. Although Mr. Schuster was not a party to the lawsuit, Dr. Carter unilaterally sought to amend her arbitration claim on January 12, 2004, and sought to add him as a respondent. Apex and TSG objected to the requested amendment, but the Arbitration Panel permitted the joinder of Mr. Schuster as a respondent. Dr. Carter added causes of action for negligence, fraud and breach of contract against Mr. Schuster. Although Mr. Schuster participated in the arbitration, he continued to maintain his argument that he was not a signatory to the management services agreement and that he had signed only as an agent for the corporation. After hearings in September and November of 2004, the arbitration panel rendered its decision, which included an award to Dr. Carter for $4,619.00 in damages against Apex and $121,000.00 against Mr. Schuster individually.

¶ 6 On March 4, 2005, the plaintiffs applied to confirm the award rendered by the arbitration panel. Although the trial court confirmed the award against Apex, the court vacated the award against Mr. Schuster finding "that the Arbitration Panel had no authority to include and no jurisdiction over Mr. Schuster."

¶ 7 On appeal, the Court of Civil Appeals held that Mr. Schuster was subject to the panel's authority as the agent and representative for the signatories to the arbitration provision in the management services agreement. The Court of Civil Appeals concluded that Mr. Schuster could be compelled to arbitrate Dr. Carter's claims against him. This Court granted certiorari to consider this case of first impression.

## II. Arbitration

¶ 8 Dr. Carter begins her argument by asserting the strong federal policy in favor of arbitration. This argument is inapplicable to the issue before this Court. This state also has a policy of favoring arbitration agreements. It adopted the Uniform Arbitration Act in 1978, (1978 Okla.Sess.Laws, ch.

308, §§ 1–18), and the Uniform Arbitration Act (2000), (2005 Okla.Sess.Laws, ch. 364, §§ 1–31, codified at 12 O.S.Supp.2009, §§ 1851–1881). By Oklahoma law, it is not the arbitrator, but the court that determines whether a person enters into a valid, enforceable agreement to arbitrate the dispute. *Rogers v. Dell Computer Corp.* 2005 OK 51, ¶ 14, 138 P.3d 826, 830. *Bilbrey v. Cingular Wireless, L.L.C.*, 2007 OK 54, ¶ 16, 164 P.3d 131. The issue of whether or in what manner a nonsignatory may be bound by an arbitration agreement has not been addressed by this Court.

## III. Jurisdiction

¶ 9 Dr. Carter argues that Mr. Schuster waived any jurisdictional arguments. Although the parties discuss this as a matter of jurisdiction of the arbitration panel, and whether it is personal or subject matter jurisdiction, the issue is clearer when viewed in terms of contract. There either is, or is not, an enforceable agreement to arbitrate the dispute between Dr. Carter and Mr. Schuster. Any issues of waiver must be determined in light of contract law. Court rulings on objections to arbitration must be resolved primarily by reference to contract and agency law. Such rulings are not decided on whether Mr. Schuster used the word "jurisdiction" to preserve his objection for appeal.

¶ 10 Despite Dr. Carter's argument that Mr. Schuster had waived his right to be excluded from the arbitration hearing, the record reveals that he consistently argued he was not a party to the management services agreement, and that he signed only as agent for Apex. The arbitration clause is found within the management services agreement, and unless Mr. Schuster can be personally bound by the terms of that agreement, he is not bound to the arbitration clause within that agreement. An individual's valid agreement to submit an issue to arbitrators is a prerequisite to the commencement of a valid arbitration. *Voss v. City of Oklahoma City,* 1980 OK 148, ¶ 5, 618 P.2d 925, 928.

¶ 11 In finding Mr. Schuster liable, the arbitration panel looked outside the four corners of the management services agreement

in arbitration. The panel's award in favor of Dr. Carter and against Mr. Schuster was based on an alleged oral agreement, which was not a part of the management services agreement. Dr. Carter admits in her brief in chief that Mr. Schuster's pleadings assert that he is not bound by the management services agreement. Dr. Carter references the respondents' hearing brief of August 24, 2004, which states, "[t]his is a contract dispute between Dr. Carter and Apex, the only parties to the MSA [management services agreement]. Neither Schuster nor TSG entered into any contractual relationship with Dr. Carter." She also quotes Mr. Schuster's motion for summary judgment filed September 3, 2004, requesting the panel dismiss him from the arbitration proceeding "because there is no legal or factual basis to assert claims against Mr. Schuster" and because "Schuster was not a party to the MSA. Schuster signed the Agreement in his capacity as Manager for Apex." In an oral motion to dismiss, which occurred at the close of Dr. Carter's evidence on September 10, 2004, Dr. Carter quotes counsel for Schuster as stating,

> "There was no evidence that [Schuster] did anything in an individual capacity, so I think it would be proper at this time for the panel to dismiss [Schuster] in his individual capacity ... He's protected by the corporate umbrella. And then agent-principal law, anything he ever did, he was the agent for the two principals."

¶ 12 Finally, in a written supplement to his motion for summary judgment, Dr. Carter quotes Mr. Schuster's assertion that "there is no legal or factual basis to assert claims against Mr. Schuster," and that "Claimants did not present any evidence establishing individual liability for Schuster at the hearing."[2] With these objections, Mr. Schuster preserved and did not waive his right to challenge before the district court the arbitration clause's applicability to Mr. Schuster as an individual.

---

2. Appellants' Opening Brief, 9–10.

3. Dr. Carter cites *Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp.*, 176 F.Supp.2d 1091, 1097 (D.C.Colo.2001), citing *AT*

## IV. Binding Nonsignatories to Arbitration Agreements

¶ 13 Dr. Carter claims that the arbitration panel was entitled to exercise jurisdiction over Mr. Schuster under the facts of this case, and that "while generally a non-signatory to an arbitration agreement cannot be forced to arbitrate claims, there are exceptions to this rule."[3] Dr. Carter suggests that there are several theories for binding nonsignatories to arbitration agreements, including estoppel and veil-piercing/alter-ego. She adds that at minimum, the doctrine of equitable estoppel "could have been used" in this case to require Mr. Schuster to participate in the arbitration proceeding.

¶ 14 The United States Court of Appeals for the Second Circuit has identified five theories for binding nonsignatories to arbitration agreements: 1) incorporation by reference, when a party has entered into a separate contractual relationship with the nonsignatory incorporating the existing arbitration clause; 2) assumption, when subsequent conduct indicates nonsignatory has assumed the obligation to arbitrate; 3) agency, when traditional principles of agency law may bind a nonsignatory to an arbitration agreement; 4) veil-piercing/alter ego, when the corporate relationship between a parent and its subsidiary are sufficiently close to justify piercing the corporate veil and holding one corporation legally accountable for the actions of the other, such as, to prevent fraud or other wrong or when a parent dominates and controls a subsidiary; and 5) estoppel, when the claims are integrally related to the contract containing the arbitration clause. *Thomson–CSF, S.A. v. American Arbitration Ass'n,* 64 F.3d 773, 776–779 (2d Cir.1995).

## V. Equitable Estoppel

¶ 15 Estoppel is a doctrine used to prevent injustice. *Estate of Allen,* 1987 OK

---

& *T Tech., Inc. v. Communications Workers of America,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

45, ¶ 10, 738 P.2d 142, 144. The elements of equitable estoppel [4] are:

> "(1) a false representation or concealment of facts, (2) made with actual or constructive knowledge of the facts, (3) to a person without knowledge of, or the means of knowing, those facts, (4) with the intent that it be acted upon, and (5) the person to whom it was made acted in reliance upon it to his detriment."

*Burdick v. Independent School Dist. No. 52 of Oklahoma County*, 1985 OK 49, ¶ 13, 702 P.2d 48, 54–55. Dr. Carter states, "At minimum, the doctrine of equitable estoppel could have been used in this case to require Schuster to participate in the arbitration proceeding." [5] The record does not reveal that the arbitration panel in this case found the elements required for the application of equitable estoppel.

¶ 16 The first element necessary to establish equitable estoppel is a false representation or concealment of facts. Dr. Carter's brief, in quoting the panel's findings, reveals that actual damages against Mr. Schuster were awarded for breach of oral contract in that he failed to continue payments on the line of credit, and failed to provide shares in the Moore Medical Center. The panel specifically listed, "Inducing Carter into written agreement using material representations that Respondents knew or should have known were false and were detrimentally relied upon by Claimants, resulting in damage: *none.*" (Emphasis added.) This finding incorporates phrases from the elements of equitable estoppel, but concludes there are no damages due, indicating that the arbitration panel did not rely on equitable estoppel in making its award. It relied on breach of an oral contract. We can only conclude that equitable estoppel was not used by the arbitration panel in making its determination to force Mr. Schuster into arbitration.

## VI. Veil–Piercing/Alter Ego

¶ 17 Regarding veil-piercing/alter ego, the same obstacles exist as with equitable estoppel. Unless the facts support the conclusion that there has been a scheme to defraud, the court must recognize and give effect to the general rule that the individual and the corporation are two separate and distinct legal entities. *See, Seitsinger v. Dockum Pontiac*, 1995 OK 29, ¶ 10, 894 P.2d 1077, 1079–1080. The arbitration did not include a finding that Mr. Schuster defrauded Dr. Carter, nor that Mr. Schuster was personally liable for the breach of the management services agreement with Dr. Carter. The fact that the arbitration panel listed the awards against Mr. Schuster and Apex separately indicates the opposite conclusion, which is that the panel determined Mr. Schuster and Apex were two separate and distinct legal entities.

## VII. Agency

¶ 18 The Court of Civil Appeals, in its decision in this case, found that Mr. Schuster could be compelled to arbitrate under the agency theory, pursuant to the third theory found in *Thomson–CSF*, 64 F.3d at 776, cited above. The Oklahoma Court of Civil Appeals cites as persuasive the facts that Mr. Schuster was the sole agent and representative of Apex and TSG with whom Dr. Carter negotiated the terms of the management services agreement; that Dr. Carter's claims against Mr. Schuster are closely intertwined with the claims against Apex; that Mr. Schuster is accused of fraudulently inducing Dr. Carter into entering into the agreement and of mak-

---

4. Black's Law Dictionary (8th ed. 2004), defines equitable estoppel as: "1. A defensive doctrine preventing one party from taking unfair advantage of another when, through false language or conduct, the person to be estopped has induced another person to act in a certain way, with the result that the other person has been injured in some way. · This doctrine is founded on principles of fraud. The five essential elements of this type of estoppel are that (1) there was a false representation or concealment of material facts, (2) the representation was known to be false by the party making it, or the party was negligent in not knowing its falsity, (3) it was believed to be true by the person to whom it was made, (4) the party making the representation intended that it be acted on, or the person acting on it was justified in assuming this intent, and (5) the party asserting estoppel acted on the representation in a way that will result in substantial prejudice unless the claim of estoppel succeeds.—Also termed estoppel by conduct; estoppel in pais."

5. Appellants' Opening Brief, 12.

ing false representations to her regarding the line of credit and shares in the medical center; that Dr. Carter's claims arise out of and relate to the management services agreement, which Mr. Schuster signed as manager of Apex; and that Dr. Carter's allegations against Mr. Schuster are congruent with those against Apex.[6] Fraud and false representations would be persuasive in making Mr. Schuster liable on the contract he signed as manager, and which contained the arbitration clause. However, the theory does not apply because we have already recognized that these were not facts used or found by the arbitration panel to support its award against the corporation.

¶19 A manager is not liable for any action or inaction taken in the capacity as manager while performing the duties of the office in compliance with the business judgment rule as applied to directors and officers of a corporation. 18 O.S.2001, § 2016(4). The business judgment rule shields a director or trustee from personal liability in the case of an honest error in judgment. *Martin v. Johnson,* 1998 OK 127, ¶33, n. 9, 975 P.2d 889, 897, n. 9.

¶20 Mr. Schuster has consistently asserted that he signed the management services agreement as the manager of his company, as an agent of Apex or TSG, and he argues that an agent of a disclosed principal is not a party to a contract between the principal and another entity. He additionally argues that the law presumes an agent of a disclosed principal intends by his signature on a contract to bind only his principal. The agent is not bound in his individual capacity.[7] Mr. Schuster is correct that such is the general rule. This general rule is true when the agent acts within the scope of his authority in the pursuit of a lawful purpose. When the agent steps outside of these parameters to engage in a tortious act, which injures the property or personal rights of another, the agent becomes liable for the injury done. This exception applies to actions for fraud, negligence and conversion by the agent. *Bane v. Anderson, Bryant & Co.,* 1989 OK 140, ¶15, 786 P.2d 1230, 1235.

¶21 During the arbitration process, Dr. Carter added Mr. Schuster as a defendant. Mr. Schuster objected and argued that he signed the management services agreement only as agent for Apex. Dr. Carter alleged breach of an oral contract by Apex, TSG, and Mr. Schuster for failure to perform the guarantee of Dr. Carter's income in the amount of $250,000.00, secured by a line of credit to be repaid by the respondents, Apex, TSG, and Mr. Schuster. The arbitration panel did not find Mr. Schuster liable under the management services contract; the panel found him liable under a separate oral agreement.

¶22 This set of facts does not fit within any of the exceptions cited by the parties that could make agents contractually liable on an agreement to which they are not individual signatories. Mr. Schuster, in his Petition for Certiorari, argues that in some of the cases cited by the Court of Civil Appeals the nonsignatory parties requested that they be permitted to arbitrate their claims against signatories. In her answer to Mr. Schuster's Petition for Certiorari, Dr. Carter cites two federal cases, *Lee v. Chica,* 983 F.2d 883 (8th Cir.1993) and *Creative Telecommunications, Inc. v. Breeden,* 120 F.Supp.2d 1225 (D.Hawai'i 1999) to support her assertion that an agent may be bound by an arbitration clause in a contract which he did not sign.

¶23 In the *Lee* case, the plaintiff had alleged that the defendant, a securities agent who was a nonsignatory to the arbitration agreement and the security firm for which he worked had, among other things, defrauded Lee. *Lee,* 983 F.2d at 885. The arbitration panel awarded punitive damages, which the 8th Circuit court upheld. Accordingly, the *Lee* case is distinguishable from the findings of the arbitration panel before which Dr. Carter and Mr. Schuster appeared, where there was no finding against Mr. Schuster of fraud or wrongdoing and no punitive damage award.

¶24 In the *Breeden* case, the plaintiff alleged, among other things, that the defendant committed fraud against the plaintiff. *Creative Telecommunications v. Breeden,*

---

6. Slip Opinion, 8–9.

7. Petition for Writ of Certiorari, 4.

120 F.Supp.2d at 1229. However, *Breeden* was before a federal district court to determine whether the case should be submitted to arbitration, in contrast to the cause before us, which has already been through the arbitration process.

¶ 25 Our examination of the arbitration award does not reveal any fact found by the panel that would show fraud or misrepresentation. As we stated, the panel found Mr. Schuster to have breached a separate, oral contract. To force Mr. Schuster to participate in the arbitration merely because he is an agent, without a finding of tortious acts on his part, is not a path we are willing to take. No Oklahoma contract or agency law pronouncement has been cited by Dr. Carter that would suggest that an agent who signed a contract as a representative of another entity may be personally bound by the terms of that contract, without having committed a wrongful act. The Second Circuit Court of Appeals, after reviewing cases from other federal circuits, concluded that the circuits had been willing to estop a *signatory* from avoiding arbitration with a nonsignatory where the nonsignatory was seeking to resolve issues in arbitration that were intertwined with the agreement the estopped party had signed, but emphasized that arbitration is "strictly a matter of contract; if the parties have not agreed to arbitrate, the courts have no authority to mandate that they do so." *Thomson–CSF*, 64 F.3d at 779. Under such facts, the nonsignatory is agreeing to arbitrate. The signatory is merely being held to his previous agreement to arbitrate.

## VIII. Conclusion

¶ 26 In this case we rely heavily upon the facts found by the arbitration panel and reported in the record for our review. Because Mr. Schuster was not found to have defrauded or committed a wrongful act against Dr. Carter, but only to have breached an alleged oral agreement between the two, neither Oklahoma statutory law nor case law supports requiring him to arbitrate pursuant to a contract that he signed only as manager and agent for Apex.

CERTIORARI GRANTED; OPINION OF THE COURT OF CIVIL APPEALS VACATED; JUDGMENT OF THE DISTRICT COURT AFFIRMED.

CONCUR: EDMONDSON, C.J., TAYLOR, V.C.J., HARGRAVE, OPALA, WINCHESTER, JJ., SUMMERS, S.J.

CONCURRING SPECIALLY: OPALA, J.

DISSENT: WATT, COLBERT, REIF, JJ.

OPALA, J., concurring.

¶ 1 I write separately from the court to explain my own reasons for joining today's opinion.

¶ 2 The authority of an arbitration panel to act upon a claim or dispute is drawn from the parties' consent.[1] The record gives **no support** to a permissible legal conclusion **that Schuster consented (*l*) either** to an arbitration of any claims against him as an individual party to a dispute **or** (2) to any other claims which by operation of law could be made against him individually. No contractual promise to arbitrate can be extended to include **disputes** lying clearly beyond the four corners of the agreement's terms of which it is a part or those entered into in a capacity different from that in which the signatory to be charged appears to stand in the contract's text.

¶ 3 Absent some express contractual enlargement, a party's consent to arbitration **will be construed** as limited to disputes arising from the performance of the contract of which the arbitration clause forms a part and will bind the signatory parties in the same capacity as that which appears from the contract's text as well as from the signatures placed upon it.[2] If a wider sweep were to be given to a party's arbitration consent, it would extend the promise far beyond the

---

**1.** *Voss v. City of Oklahoma City,* 1980 OK 148, 618 P.2d 925.

**2.** *Wright Lumber Co. v. Herron,* 199 F.2d 446 (10th Cir.1952).

parameters of the contract.[3] The breadth of a promise presents a question of law to be answered by the court upon consideration of the agreement's provisions. **As the court's opinion informs us, the breadth of one's consent to arbitrate is governed by contract law's principles.**

---

**3.** *Local 5–857 Paper, Allied–Industrial, Chemical and Energy Workers Int'l Union v. Conoco, Inc.,* 320 F.3d 1123 (10th Cir.2003); *Cannon v. Lane,* 1993 OK 40, 867 P.2d 1235.