**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 4 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

LOCAL 5-857 PAPER, ALLIED-
INDUSTRIAL, CHEMICAL AND
ENERGY WORKERS
INTERNATIONAL UNION, labor
organization; PAPER,
ALLIED-INDUSTRIAL, CHEMICAL
AND ENERGY WORKERS
INTERNATIONAL UNION, Suing as:
Paper, Allied-Industrial, Chemical and
Energy Workers International Union
(AFL-CIO), labor organization,

   Plaintiffs - Appellees,

  v.

CONOCO INC., a Delaware
corporation,

   Defendant - Appellant.

No. 02-5064

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 01-CV-594-H)**

---

David A. Scott (Paul E. Hash with him on the briefs) of Jackson Lewis L.L.P.,
Dallas, Texas, for the Defendant-Appellant.

Steven R. Hickman of Frasier, Frasier & Hickman, L.L.P., Tulsa, Oklahoma, for
the Plaintiffs-Appellees.

Before **TACHA**, Chief Judge, **LUCERO**, and **ROBINSON**[*], Circuit Judges.

**LUCERO**, Circuit Judge.

The Paper, Allied-Industrial, Chemical and Energy Workers International Union and its local 5-857 ("PACE" or "Union") brought suit in federal district court seeking to compel Conoco, Inc. ("Conoco") to arbitrate the Union's three employment grievances pursuant to the parties' collective bargaining agreement ("CBA"). Conoco insisted that the Union's grievances related to matters within the sole discretion of management, and thus were not arbitrable under an express provision in the CBA. The district court disagreed, holding that the grievances fell within the CBA's broad arbitration clause. Conoco appeals. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

**I**

Conoco operates an oil refinery in Ponca City, Oklahoma and PACE is the collective-bargaining representative of employees at this facility. The parties entered into a CBA, which provides that "differences . . . relating to interpretation

---

[*] The Honorable Julie A. Robinson, United States District Judge for the District of Kansas sitting by designation.

or performance of [the CBA] . . . are arbitrable."[1]  Under Article 12 of the CBA,

however, Conoco has reserved certain management rights, including the sole

responsibility to hire and assign work, that are not subject to arbitration.[2]

---

[1]  Article 31 provides, in pertinent part:

A grievance is a dispute or conflict between the Company and the Union as to the interpretation or application of the terms of this Agreement.

\*\*\*

Step 4.  If the grievance is not resolved at Step 3, it may be submitted for arbitration by giving written notice within 20 days.

\*\*\*

Only differences arising between the Union and the Company relating to interpretation or performance of this Agreement which cannot be adjusted by mutual agreement and have gone through the grievance procedure are arbitrable, except as otherwise provided in this Agreement.

(Appellant's App. at 81–83.)

[2]  Article 12 provides, in pertinent part:

Hiring, maintaining order, and discipline or discharge for just cause are solely the responsibility of Management.

Other responsibilities, solely those of Management, are: the assignment of work subject only to other provisions of this Agreement; the determination and location of any part or all of the physical plant; the determination of the number of persons required to operate and maintain any portion or all of the physical plant . . .

\*\*\*

Grievances originating under Article 12 are subject to the grievance procedure but cannot be submitted to arbitration; and no arbiter has the authority to rule on Article 12 . . . .

(Id. at 34–35.)

Various work groups at the refinery are known as "crafts" or "progression units"; one such group is called the "repairman craft." Article 21-4 provides that when there is a vacancy in that craft, bargaining members may bid for the position, which will be filled on the basis of seniority. A caveat under that provision, however, is that management may fill at its discretion (either by job posting, by assignment, or by direct hire) those mechanical craft vacancies requiring "high technical skills."[3]

Around December 1999, Conoco informed the Union that the repairman craft now required "high technical skills," and accordingly, Conoco would be filling vacancies in that craft at its discretion. The Union filed a grievance, asserting that "the Company failed to demonstrate sufficient change to justify

---

[3] Article 21-4 provides, in pertinent part:

> [P]ermanent vacancies within a progression unit will be filled by the employees in the progression unit moving up, leaving the bottom number in the progression unit vacant. Within 4 days of the occurrence of the vacancy, the vacant number to be filled by bidding will be posted for bid on the plant bulletin board for a period of 10 Personnel Office working days. . . . The successful bidder will be the one with the most seniority as determined by Article 21-2(a), (c), and (d).
>
> ***
>
> Mechanical craft vacancies requiring high technical skills or created by abnormal circumstances may be filled at Management's discretion, either by job posting, by assignment, or by direct hire.

(Id. at 59–60.)

assignment of these craft vacancies outside the established seniority bid process" and that the "mechanical craft remains substantially the same as it has always been and has not changed to one of high technical skills." (Appellant's App. at 101.) In a letter dated November 17, 2000, Conoco explained the basis for its decision that the repairman craft now required high technical skills.[4]

Approximately one month later, Conoco implemented its plan and filled a vacancy in the repairman craft without posting it for bid. Consequently, the Union filed two more grievances, arguing that vacancies were not posted for bid as required under the CBA. In response, Conoco asserted that deciding the qualifications of the repairman craft was expressly reserved to management under the CBA.

On August 9, 2001, the Union filed the instant suit in district court. In its amended complaint, the Union sought to compel arbitration of all three grievances.[5] Reviewing Conoco's motion for summary judgment, the district court concluded that Article 12 did not make the determination of whether a job

---

[4] Conoco expressed its desire to improve in "the area of rotating equipment reliability in the refinery" and insisted that any improvement "depends greatly upon recognizing the need for higher technical skills to be in place in these jobs." (Appellant's App. at 108.) Recognizing the Union's dismay at lost opportunities for current members to bid for repairman craft vacancies, Conoco nonetheless maintained that "there is a greater need to find today, those individuals with a good start on the level of skills needed to perform the desired work." (Id.)

[5] In the alternative, the Union suggested that the district court hear the grievances on the merits and find Conoco in breach of the CBA.

required "high technical skills" a matter of managerial discretion, and therefore ordered all three grievances to arbitration. Conoco appeals, arguing that it has sole discretion under Article 12 to determine job qualifications and thus whether vacancies in the repairman craft require "high technical skills" is not an arbitrable question.

## II

Whether a particular grievance is arbitrable under the terms of a collective bargaining agreement is a question of law we review de novo. O'Connor v. R.F. Lafferty & Co., Inc., 965 F.2d 893, 901 (10th Cir. 1992).

We begin by acknowledging that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 648 (1986). It follows that "[t]he question whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." Howsam v. Dean Witter Reynolds, Inc., 123 S. Ct. 588, 591 (2002) (quotation omitted). At the same time, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." AT&T, 475 U.S. at 649.

Moreover, when a contract contains an arbitration clause, there is a presumption in favor of arbitrability; that is, "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." Id. at 650 (quotation omitted).[6] The Supreme Court has held that the presumption is "particularly applicable" where, as in the case before us now, there is a broad arbitration clause. Id. "In such cases, in the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." Id. (quotation omitted).

As noted above, the Union seeks to compel arbitration of its grievances, which challenge Conoco's decision that the repairman craft requires "high technical skills" and thus can be filled at management's discretion. Decisive in this appeal is whether the Union's grievances originate under Article 12 of the CBA (and thus are not subject to arbitration) or represent a dispute as to the

_____

[6] The Supreme Court has explained that the "presumption of arbitrability for labor disputes recognizes the greater institutional competence of arbitrators in interpreting collective-bargaining agreements, furthers the national labor policy of peaceful resolution of labor disputes and thus best accords with the parties' presumed objectives in pursuing collective bargaining." AT&T, 475 U.S. at 650 (quotation omitted).

interpretation of "high technical skills" in Article 21-4 (and thus <u>are</u> subject to arbitration). Conoco argues that its decision falls under the Management Rights Clause in Article 12, because "[t]he right to hire, assign work, and determine operations necessarily embraces the right to define job qualifications and to determine that the repairman job is of a nature requiring 'high technical skills.'" (Appellant's Br. at 10.) Although the Union concedes that Conoco has the right to set job qualifications under Article 12, it asserts that Conoco does <u>not</u> have the right to determine whether said qualifications constitute "high technical skills." We agree that Article 12 does not unambiguously vest management with the discretion to define and interpret terms found in other provisions of the CBA and does not expressly exclude the present dispute from arbitration.

Given the absence of an express exclusion in Article 12, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." <u>AT&T</u>, 475 U.S. at 650. Conoco cites Article 21-4 of the CBA in support of its argument that it has sole managerial discretion to determine that certain mechanical craft positions require high technical skills. Article 21-4 provides that "[m]echanical craft vacancies requiring high technical skills . . . may be filled at Management's discretion." Conoco contends that "[t]he language in Article 21-4 shows that Conoco specifically bargained for flexibility to fill certain technical job vacancies." (Appellant's Br. at 13.) Although Article 21-4 vests

management with discretion to <u>fill</u> vacancies that require high technical skills, it does not necessarily follow that management has the discretion to decide whether a vacancy requires high technical skills in the first place.

Because we cannot say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," <u>AT&T</u>, 475 U.S. at 650, and "[d]oubts should be resolved in favor of coverage," <u>id.</u>, the Union's grievances in the instant case should go to the arbitrator. Although the grievances relate to Conoco's hiring decisions in the broadest sense, and loosely can be said to arise under Article 12, we agree with the district court that they are better understood as a dispute over the interpretation of the phrase "high technical skills" in Article 21-4. As such, the grievances are subject to arbitration pursuant to the broad arbitration clause in the CBA.

### III

For the foregoing reasons, the order of the district court compelling arbitration is **AFFIRMED**.